**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SHAWN AMMONS and
JESSICA AMMONS,

       Plaintiffs/Counter-Defendants,

vs.                                              Civ. No. 19-419 SCY/JHR

SENTRY INSURANCE COMPANY,

       Defendant/Counter-Plaintiff.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTION TO AMEND COMPLAINT

This Opinion addresses Plaintiffs'/Counter-Defendants' Motion for Partial Summary Judgment for UM Benefits (Doc. 13), filed May 24, 2019; Defendant's/Counter-Plaintiff's Cross-Motion for Summary Judgment (Doc. 17), filed June 12, 2019; and Plaintiffs' Opposed Motion for Leave to File First Amended Complaint (Doc. 33), filed September 12, 2019. I held a hearing on these motions on December 16, 2019. Doc. 39.[1]

The central issue before the Court is whether Plaintiffs are entitled to recover punitive damages under their uninsured property damage coverage for the actions of an unknown thief, who crashed Plaintiffs' car after stealing it. Defendant argues that Plaintiffs have no valid punitive damages claim under their uninsured property damage coverage for two primary reasons: (1) uninsured motor vehicle coverage (on which the punitive damages claim is based) is not available for insured vehicles such as the one at issue here, and (2) even if such coverage were available, punitive damages are not available against an unknown tortfeasor. Regarding

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. Docs. 5, 7, 8.

Defendant's first argument, although the operative policy defines Plaintiffs' vehicle as insured (and therefore ineligible for uninsured motorist coverage), it is uncertain whether this policy exclusion would be valid under New Mexico's Uninsured Motorist Act. Regarding Defendant's second argument, the Court agrees that punitive damages, which are meant to punish and deter, are not available against an unknown tortfeasor. The Court therefore determines that Plaintiffs are not entitled to the punitive damages they seek.

Although this conclusion necessarily resolves most of the issues Plaintiffs raise in their complaint, a portion of Plaintiffs' extra-contractual allegations not related to denial of coverage remains viable. Specifically, the Court's decision that punitive damages are not available against an unknown tortfeasor has no effect on Plaintiffs' extra-contractual claims that are premised on Defendant's alleged delays in responding to Plaintiffs' requests. However, Plaintiffs' failure to allege sufficient facts to sustain those allegations makes them subject to dismissal. Plaintiffs shall be allowed 30 days from the entry of this Order to move to amend to remedy this deficiency.

Thus, the Court denies Plaintiffs' Partial Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment. The Court also denies as futile Plaintiffs' Motion for Leave to File First Amended Complaint because the claims in that proposed amendment would be subject to dismissal.

## BACKGROUND

This case arises from the theft of Plaintiffs' vehicle, which was stolen from an auto repair shop on November 22, 2018. Plaintiffs' Undisputed Material Facts ("P-UMF") 1. A police officer later spotted the stolen vehicle and initiated a traffic stop. Doc. 27 at 1 (Joint Status Report). The driver fled, leading the officer on a chase. *Id.* The officer lost sight of the vehicle but later found it unoccupied and crashed. *Id.*; P-UMF 2. The auto repair shop's insurer paid

Plaintiffs for the property damage to the car. Defendant's Undisputed Material Facts ("D-UMF")

7. Plaintiffs seek, under their uninsured ("UM")/underinsured motorist ("UIM") policy with

Defendant Sentry Insurance Company, only punitive damages for the acts of the unknown thief.[2]

D-UMF 7. Defendant Sentry denied the claim, asserting that UM property damage coverage does

not provide coverage for theft. *See* Docs. 13-3 to 13-10.

Plaintiffs initially filed this suit in state court. Doc. 1-1. The Complaint brings three

counts: (1) UIM benefits; (2) breach of contract; and (3) violations of the insurance practices act,

insurance bad faith, and punitive damages. *Id.* Defendant removed the matter to federal court,

Doc. 1, and filed a counterclaim with two counts: (1) declaratory relief regarding UM/UIM

coverage; and (2) declaratory relief regarding UM/UIM limits. Doc. 4. Plaintiffs now seek partial

summary judgment on Count I of their Complaint and on Count II of the Counterclaim. Doc. 13.

Defendant filed a cross-motion, seeking summary judgment on all three counts of Plaintiffs'

Complaint. Doc. 17.

## **STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[2] In their cross-motions, both parties address whether Plaintiffs are entitled to *uninsured* motorist coverage. In their complaint, however, Plaintiffs refer to *underinsured* motorist benefits. Doc. 1-1. The unknown thief whose acts serve as the basis for Plaintiffs' punitive damages claim is uninsured rather than underinsured. *Am. States Ins. Co. v. Frost*, 1990-NMSC-065, ¶ 1, 793 P.2d 1341 (the "statute equates uninsured and unknown motorists"). Therefore, the Court construes Plaintiffs' Complaint as seeking uninsured rather than underinsured benefits. While uninsured and underinsured motorist coverage are generally treated the same, subsection A of NMSA § 66-5-301, which addresses circumstances where no insurance exists, uses the term "uninsured motor vehicles." In contrast, subsection B, which applies when there is underinsurance, uses the term "underinsured motorist." Because the parties' briefs place significance on whether it is the motorist or the vehicle that is uninsured, the Court takes care to recognize the precise language used in the governing section of NMSA § 66-5-301.

Civ. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

Because this Court is sitting in diversity jurisdiction, the substantive law governing this case is that of New Mexico. *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1164 (10th Cir. 2017). New Mexico courts "resolve questions regarding insurance policies by interpreting their terms and provisions in accordance with the same principles which govern the interpretation of all contracts." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 11, 12 P.3d 960 (internal quotation marks omitted). "In order to determine coverage, [courts] initially look to the language of the policy itself." *Gonzales v. Allstate Ins. Co.*, 1996-NMSC-041, ¶ 12, 921 P.2d 944. New Mexico courts "interpret unambiguous insurance contracts in their usual and ordinary sense unless the language of the policy requires something different." *Id.* (internal quotation marks omitted). "Thus, when the policy language is clear and unambiguous,

4

[courts] must give effect to the contract and enforce it as written." *Ponder*, 2000-NMSC-033,

¶ 11. "But when an insurance provision does conflict with a statute, it is void." *Chavez v. State*

*Farm Mut. Auto. Ins. Co.*, 1975-NMSC-011, ¶ 6, 533 P.2d 100.

## DISCUSSION

**I.     The amount in controversy needed to sustain diversity jurisdiction is met.**

  Before addressing the merits of the pending cross-motions, the Court must determine

whether it has subject matter jurisdiction to hear this case. Plaintiffs originally filed this lawsuit

in state court and Defendant removed it to federal court, citing diversity jurisdiction under 28

U.S.C. § 1332. Doc. 1 at 2. Section 1332(a) gives federal courts "original jurisdiction of all civil

actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs, and is between citizens of different States . . . ." When a plaintiff files a civil

action in state court over which the federal court would have original jurisdiction based on

diversity of citizenship, the defendant may remove the action to federal court, provided that no

defendant is a citizen of the State in which such action is brought. *See* 28 U.S.C. § 1441(a), (b).

However, if the federal court determines it lacks subject matter jurisdiction, such as lacking

diversity jurisdiction, it must remand the matter to the state court. 28 U.S.C. § 1447(c). The

removing party bears the burden of establishing the requirements for federal jurisdiction. *Martin*

*v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001), *abrogated on other grounds by*

*Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014).

  In this case, the parties do not dispute that they are citizens of different states. *See* Doc. 1

at 2. Rather, Plaintiffs challenge whether the amount in controversy is met. Doc. 21 at 16.

Plaintiffs assert that the Court should dismiss Count II of the Defendant's Counterclaim (seeking

declaratory relief regarding UIM/UM limits) because the amount of available UM coverage is

only $14,763.37—that is, $25,000 minus the offset from the underlying settlement with the auto

repair shop. Doc. 13 at 25. Plaintiffs argue that Defendant only brought Count II of the Counterclaim to justify removing the case to federal court when the amount in controversy is clearly less than $75,000. *Id.* Although Plaintiffs' argument focuses on the Defendant's Counterclaim, the Court must begin with whether it has subject matter jurisdiction over Plaintiffs' Complaint.[3]

To determine the amount in controversy, the court should first look to the complaint. If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is "deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). When the plaintiff's initial pleading seeks nonmonetary relief or does not state the amount in controversy, the defendant's notice of removal may do so. *Id.* § 1446(c)(2)(A). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by §1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 574 U.S. at 89. Thus, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 87.

If the defendant's allegation regarding the amount in controversy is contested, Section 1446(c)(2)(B) provides that "removal of the action is proper on the basis of an amount in controversy asserted" by the defendant "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional minimum. As the Supreme Court has explained, "[t]his provision . . . clarifies the procedure in order when a defendant's

---

[3] Plaintiffs do not seek remand to state court. Nonetheless, the Court has an independent duty to ensure it has subject matter jurisdiction. *See Turk v. United States Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir. 1988).

assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88. A defendant seeking removal can establish jurisdictional facts by a preponderance in many ways:

> by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands.

*McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008) (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006)). If a defendant is able to prove these jurisdictional facts, the matter should stay in federal court unless it is legally certain that the amount in controversy is not met. *Id.*; *see also Hammonds v. Stamps.com, Inc.*, 844 F.3d 909, 912 (10th Cir. 2016) ("to justify dismissal under this standard it must appear to a legal certainty that the claim is really for less than the jurisdictional amount").

In this case, Plaintiffs do not demand a stated sum in their Complaint; instead, they seek punitive damages under the UM portion of their policy, as well as damages for breach of contract and extra-contractual claims, including punitive damages and attorney's fees. *See* Doc. 1-1. In the Notice of Removal, Defendant alleges that "Plaintiffs have a Sentry policy with limits of $25,000 for Uninsured Motorist Property Damage ('UMPD') and have four vehicles insured under the policy. In the course of the adjustment of the claim, Plaintiffs have claimed that their policy has a total of $100,000 in stacked UM/UIM property damage coverage." Doc. 1 at 2. Defendant further explains that Plaintiffs demanded $55,000 to settle their property damage claim and also claim damages for extra-contractual claims and attorneys' fees, which "makes it possible to establish here that $75,000 is 'in play.'" *Id.* at 3-5 (citing cases in which juries

awarded punitive damages against an insurance company for bad faith and unfair insurance claims practices).[4]

The Court finds, by a preponderance of the evidence, that the amount in controversy is satisfied. Before they filed suit, Plaintiffs demanded $55,000 to resolve their punitive damages UM claim. Doc. 13-4. In making that demand, Plaintiffs claimed that they had not received the requested rejection forms and thus "can only assume those forms do not exist and therefore applicable coverage must be reformed to $100,000 in stacked UM property damage coverage." *Id.* After making their demand, Plaintiffs received the rejection forms. Doc. 13-6. Plaintiffs now assert that because their Complaint does not state that the rejection forms are invalid, the Complaint clearly seeks only $25,000 for their property damage claim. Yet, the Complaint does not make clear that Plaintiffs are seeking less than their previous demand. Omitting a specific demand is not the same as conceding that only $25,000 is available for the property damage claim. Additionally, Plaintiffs offer no other evidence to show that they communicated to Defendant, after receiving the rejection forms, that they were seeking only $25,000 in coverage or that they would not be seeking to reform the rejection under New Mexico law.[5]

In addition to the property damage claim, Plaintiffs also seek damages for extra-

---

[4] At oral argument, Plaintiffs stated that their earlier demand was no longer valid and, at this point, they would not agree to accept less than $75,000.

[5] In the present motion, Plaintiffs concede that only $25,000 is at issue for their property damage claim. Doc. 13 at 25. However, "[t]he determination of whether the amount in controversy requirement is satisfied is based on the amount in controversy claimed *at the time that notice of removal is filed in federal court.*" *Moody v. Dollar Tree Store 2967*, No. CV 18-1189 JB/KK, 2019 WL 3322872, at *9 (D.N.M. July 24, 2019) (emphasis added); *see also Aranda v. Foamex Int'l*, 884 F. Supp. 2d 1186, 1208 (D.N.M. 2012) (post-removal evidence may serve to clarify what amount was in controversy when the case was removed, but not to alter the amount after removal). Further, Plaintiffs' concession does not address potential damages under their extra-contractual claims.

contractual claims. In the Notice of Removal, Defendant provides general calculations based on those theories and what previous juries have awarded, showing that juries have awarded large sums for bad faith. Doc. 1 at 3-4. Plaintiffs offer no rebuttal to those calculations. Accordingly, the Court finds that Defendant has shown by a preponderance of the evidence that more than $75,000 is at issue in this case, and that there is no legal certainty that $75,000 or less is at stake.

Because the Court has subject-matter jurisdiction over Plaintiffs' Complaint, it likewise has subject-matter jurisdiction over Defendant's Counterclaim. Counterclaims are categorized as being either "compulsory" or "permissive." Fed. R. Civ. P. 13(a), (b). A counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). Defendant's request for declaratory judgment arises out of the same dispute as Plaintiffs' Complaint. The Court thus has subject-matter jurisdiction over the Counterclaim.[6] *N.L.R.B. ex rel. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC v. Dutch Boy, Inc., Glow Lite Div.*, 606 F.2d 929, 932 (10th Cir. 1979); *see also* 28 U.S.C. § 1367(a); *Glob. NAPs, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 85-86 (1st Cir. 2010).

---

[6] Defendant's counterclaim seeks declaratory relief under 28 U.S.C. § 2201. Doc. 4. The Court has discretion over whether to hear a declaratory judgment action. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) ("The Supreme Court as long made clear that the Declaratory Judgment Act gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.") (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)). There are several factors the court should consider when deciding whether to hear a declaratory action. *Id.* at 983. In this case, because the parties did not raise or brief this issue, and because the declaratory judgment action is related to the issues raised in Plaintiffs' Complaint, the Court will not further address whether it should decline to hear the counterclaim for declaratory relief.

**II.** **Plaintiffs are not entitled to recover punitive damages under their UM policy for the acts of an unknown thief.**

The parties dispute whether Plaintiffs are entitled to recover punitive damages under their UM property damage coverage for the actions of the unknown thief. Defendant asserts Plaintiffs are not for two primary reasons: (1) the policy does not permit recovery of UM benefits when the vehicle is insured rather than uninsured; and (2) punitive damages are not available against an unknown tortfeasor. While the Court agrees with Defendant about what the policy says, it nonetheless rejects Defendant's first argument because the portion of the policy Defendant relies on may be invalid under New Mexico's Uninsured Motorist Act ("UMA"), as interpreted by the New Mexico courts. The Court agrees with Defendant, however, that punitive damages in New Mexico are not available for the actions of an unknown tortfeasor. Finally, the Court rejects Plaintiffs' argument that the mend-the-hold doctrine would apply here to prevent Defendant from prevailing on this argument. Even if Plaintiffs are correct that Defendant should have asserted, pre-lawsuit, the argument that punitive damages are not available against an unknown tortfeasor, Plaintiffs have shown no prejudice resulting from the failure to do so.

A. <u>Whether Defendant's policy would be valid under New Mexico law is uncertain.</u>

In addressing whether coverage exists, the Court first looks at the policy. It next considers whether the relevant portions of the policy are valid under New Mexico law.

1. <u>Plain language of the policy</u>

Defendant argues that the damage to Plaintiffs' car "did not arise out of an accident involving the use of an uninsured motor vehicle" because the vehicle at issue was insured. Doc. 16 at 5. This argument has logical appeal under the terms of the policy at issue. The policy provides UM property damage coverage in the following situation:

> We will pay damages for property damage which an insured person is legally entitled to recover from the owner or operator of an *uninsured motor vehicle or an*

10

*underinsured motor vehicle*. The property damage must be caused by a car accident and result from the ownership, upkeeping or use of an uninsured motor vehicle or an underinsured motor vehicle.

D-UMF 1 (emphasis added).[7] The policy defines an uninsured motor vehicle as follows:

(A)     Not insured by a property damage liability bond or policy or does not have liability limits complying with the financial responsibility law of the policy state.

(B)     Insured by a property damage liability bond or policy at the time of the car accident whose insurer is or becomes insolvent or denies coverage.

(C)     A hit-and-run vehicle. A hit-and-run vehicle is a motor vehicle whose operator and owner are unknown and which causes property damage that is coverage by this endorsement.

D-UMF 2. The policy defines an underinsured motor vehicle as follows:

"Underinsured motor vehicle" means a motor vehicle as to which there is a property damage liability policy or a bond applicable at the time of the car accident but the sum of the limits of liability under all property damage liability insurance applicable at the time of the car accident is less than the sum of the limits of liability applicable to the insured person for Uninsured/Underinsured Motorist Property Damage Coverage under this policy and any other policy.

D-UMF 2.

The policy also provides that an uninsured or underinsured motor vehicle does not mean

a motor vehicle that is:

(A)     *Covered under the liability coverage of the same policy of which your insured car is a part.*
(B)     Owned by, furnished or available for your regular use or a relative's regular use.

---

[7] Plaintiffs do not specifically dispute this fact from Defendant's Motion for Summary Judgment or the four other facts that provide the policy language. Doc. 21 at 2-3, ¶¶ 1-4, 6. Instead, Plaintiffs contend that "the contents of the insurance policy speak for themselves and . . . the terms of the policy are only enforceable if they comport with New Mexico's Uninsured Motorist Act." *Id.* The Court therefore deems these facts undisputed. *See* D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

D-UMF 3 (emphasis added). "Your insured car" is "[a]ny car described on your Declaration Page, for which a premium charge is shown." D-UMF 4. Plaintiffs' stolen vehicle was a 2014 Dodge Challenger, *see* Doc. 13-1 at 4, which is a car described on Plaintiffs' Declaration Page, for which a premium charge is shown and which was covered by liability insurance. D-UMF 5.

Per the unambiguous language of the policy, Defendant is correct that Plaintiffs' stolen vehicle was an insured vehicle under the Sentry policy, covered by liability coverage of the same policy. Applying the definitions contained in the policy, an uninsured or underinsured motor vehicle did not cause the property damage. Although Plaintiffs allege they are entitled to UM coverage because the thief was an uninsured *driver*, Doc. 1-1 ¶¶ 27-28, the UM policy at issue here looks at the status of the *vehicle* (whether the vehicle that caused the property damage was uninsured), not the status of the driver. Thus, applying the definition of "uninsured motor vehicle" contained in the policy, Plaintiffs' vehicle would be an insured vehicle not covered by the UM policy.

Given the plain language of the UM policy, the Court agrees that the policy does not provide UM coverage for the damage an unknown thief caused to Plaintiffs' insured vehicle. Rather than ending its inquiry, however, this conclusion only brings the Court to Plaintiffs' stronger argument: that New Mexico courts would find the policy's limiting definitions inconsistent with the UMA and therefore invalid under New Mexico law.

2.    Validity of the policy under the Uninsured Motorist Act

Even if Defendant's policy precludes coverage, Plaintiffs argue, "[a]ny contractual argument that Defendant makes to justify its denial of Plaintiffs' claim must be considered in light of the [Uninsured Motorist Act] and the applicable case law, which voids any policy provision that conflicts with the UMA." Doc. 21 at 9. This is true. While "exclusionary (provisions) in insurance contracts shall be enforced so long as their meaning is clear and they do

not conflict with statutory law . . . when an insurance provision does conflict with a statute, it is void." *Chavez v. State Farm Mut. Auto. Ins. Co.*, 1975-NMSC-011, ¶ 6, 533 P.2d 100 (internal quotation marks and citation omitted). Thus, the Court must consider whether Defendant's policy would be valid under New Mexico law.

"When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court[.]" *Nelson v. United States*, 915 F.3d 1243, 1248 (10th Cir. 2019) (quotation marks omitted). However, where, as here, no such rulings exist, the Court "must endeavor to predict how that high court would rule." *Id.* (quotation marks omitted). It does so by "seeking guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Patterson v. PowderMonarch, LLC*, 926 F.3d 633, 637 (10th Cir. 2019) (alteration and quotation marks omitted). The Court begins its analysis "by giving proper regard to relevant rulings by other courts of the state because each ruling is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1251 (10th Cir. 2018) (internal quotation marks omitted).

When it comes to the Uninsured Motorist Act, NMSA § 66-3-301(A), New Mexico courts are particularly apt to strike exclusionary provisions in UM insurance policies because "public polices [related to the UMA] warrant application of a qualitatively different analysis from that appropriate for other insurance cases." *Britt v. Phoenix Indem. Ins. Co.* 1995-NMSC-075, ¶ 11, 907 P.2d 994 (internal quotations omitted). Thus, the New Mexico Supreme Court has "consistently [] held that the uninsured motorist statute and contracts arising thereunder should

be construed liberally in favor of coverage in order to implement the remedial purposes behind that statute." *Id.*

As an example of this, in *Padilla v. Dairyland*, the New Mexico Supreme Court held that a named insured injured in a one-car accident was entitled to UM/UIM benefits even though (1) the vehicle was insured and (2) the insurance policy explicitly excluded from UM/UIM coverage vehicles, like the one at issue, that were owned by the insured. 1990-NMSC-025, ¶ 23, 787 P.2d 835. In reaching this decision, the *Padilla* court concluded that public policy considerations required it to invalidate the policy's family-owned vehicle exclusion and to disregard related New Mexico Department of Insurance regulations that accompany the UMA. *Id.* ¶ 21 (citing N.M. Ins. Dep't Reg., Art. 5, Ch. 66, Rule 1, § 5-1-2, at 266 (Rev. 1989)). Despite this regulation and acknowledgment of previous New Mexico Supreme Court precedent that would dictate a different result, the *Padilla* court held "that the exclusion before us is void as violative of public policy." *Id.* ¶ 22. Another case decided just three days before *Padilla*, *Foundation Reserve Ins. Co., Inc. v. Marin*, dealt with a UM rather than a UIM claim but likewise held that an exclusionary clause omitting family vehicles from the definition of uninsured motor vehicle "violat[es] public policy and the express language of the [UMA]." 1990-NMSC-022, ¶ 5, 787 P.2d 452. Thus, in bodily injury cases, the *Padilla* and *Marin* courts explicitly ruled N.M. Code R. § 13.12.3.14(C)(3)(a)-(b) to be invalid. 1990-NMSC-022, ¶ 5; 1990-NMSC-025, ¶ 22.

*Padilla* and *Marin* are important for at least two reasons. First, they provide examples of the New Mexico Supreme Court's historical skepticism of exclusionary provisions affecting UM/UIM coverage. Second, the policy in the present case contains the same type of family-vehicle exclusion at issue in *Padilla* and *Marin*. P-UMF 3. Indeed, Defendant relies on the same regulation these cases invalidated to argue that the policy comports with the UMA. Doc. 17 at 13

("[T]he Code [] excludes from the definition of an uninsured auto 'an insured motor vehicle' and 'a motor vehicle owned or furnished for the regular use of the insured, his spouse, or a relative of either who is a resident of the same household.' Again, because Plaintiffs' vehicle was insured and was available for the regular use of Plaintiff, it was not an 'uninsured motor vehicle' and the UM Statute has no application here.").

Although Defendant did not address *Padilla* and *Marin* in its brief, at oral argument it asserted that those cases do not apply to property damage claims as is the case here. Defendant pointed out that bodily injury is associated with a person whereas property damage is associated with a vehicle. Thus, Defendant argued, while an insured person can be placed in an insured class, an insured vehicle does not receive special consideration as a "class-one" insured. Indeed, both the *Padilla* and *Marin* courts noted that the injured party was a household member, and therefore a class-one insured. 1990-NMSC-025, ¶ 18; 1990-NMSC-022, ¶ 3; *see also Konnick v. Farmers Ins. Co.*, 1985-NMSC-070, ¶ 12, 703 P.2d 889 (named insureds, their spouses, and relatives who live in the same household are "class one" insureds and "the purchaser of underinsured motorist policies [who is also the named insured] expects that he will be protected from losses incurred as a result of the negligence of underinsured motorists no matter what his location at the time of the accident.") (internal footnote omitted).

However, Defendant's argument has at least three weaknesses. First, the text of the UMA appears to treat bodily injury and property damage the same. NMSA § 66-5-301(A) (listing damages to be covered by UM coverage as "bodily injury, sickness or disease, including death, and injury to or destruction or property"). Second, the rationale of *Padilla* and *Marin* could reasonably apply to property damage in addition to bodily injury. After all, UM property damage claimants are named insureds, making them most similar to the class-one insureds who received

solicitous treatment in *Padilla* and *Marin*. Third, a covered insured whose car is damaged in an accident with an uninsured tortfeasor is in a position similar to an insured whose car is damaged when a thief crashes it. Both can argue that they reasonably expected the UM property damage insurance they purchased to protect them from damage an uninsured motorist caused to their car. These considerations create an open question as to whether the family-use policy exclusion in Defendant's policy would survive a state court challenge in a property damage case. *See Boradiansky v. State Farm Mut. Auto. Ins. Co.*, 2007-NMSC-015, ¶ 7, 156 P.3d 25 (noting that New Mexico courts have throughout the years "invalidated exclusions that they determined were in conflict with the underlying purpose of the Uninsured Motorist Act" and stating "we have referred several times to the exclusion of a discrete group as improper . . . [w]e have been clearest about limitation on the rights of a class-one insured to recover").

Defendant's stronger argument is that, in considering whether the UMA requires payment of UM benefits, the court should look to the insured status of the vehicle rather than the insured status of the motorist. Focusing only on the plain language of the UMA, Defendant is correct. The UMA requires that "[n]o motor vehicle or automobile liability policy . . . shall be delivered or issued for delivery in New Mexico . . . unless coverage is provided . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators *of uninsured motor vehicles* . . . for injury to or destruction of property resulting therefrom . . . ." NMSA § 66-5-301(A) (emphasis added). This indicates that, in determining whether UM benefits are available, courts should ask whether the *vehicle* was uninsured, not whether the *motorist* was uninsured.

Faced with this plain language, Plaintiffs assert that New Mexico case law compels a different outcome. Specifically, Plaintiffs argue that New Mexico case law has clarified that the

UMA looks to the insured status of the *driver* rather than the insured status of the *vehicle*. Doc. 1-1, ¶¶ 27-28; *see also* Doc. 19 at 4 ("The emphasis is on the legal entitlement to collect from the uninsured/unknown motorist, not on the fact that he was driving the Plaintiff's vehicle. Any policy provisions to the contrary are void and unenforceable."). In this regard, Plaintiffs are correct: To determine whether the present exclusionary provision is valid, reading the plain language of the UMA and its accompanying regulations is not enough. The Court must also look to the New Mexico Supreme Court's interpretation of the UMA.

In *Boradiansky*, the New Mexico Supreme Court reached several conclusions relevant to Plaintiffs' argument. 2007-NMSC-015, ¶ 2. First, in holding that an exclusion of all government-owned vehicles from the definition of an uninsured motor vehicle is unenforceable, the court stated that the UMA cannot be read "to allow an exclusion of certain vehicles." *Id.* ¶ 9. Second, in discussing the purpose of the UMA, the court chose language directed at status of the person rather than at the status of the vehicle. It stated, "[t]he main focus behind the Uninsured Motorist Act was to allow for coverage to be provided for innocent motorists injured through the fault of uninsured or underinsured *motorists* in New Mexico." *Id.* (emphasis added). It further noted that the UMA is designed to "place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the *tortfeasor* had possessed liability insurance." *Id.* ¶ 8 (emphasis added). Finally, as Plaintiffs stress, the court emphasized that uninsured motorist coverage turns on two elements—and two elements only: "[t]he only limitations contained in the [Uninsured Motorist] Act are the *motorist* be uninsured or underinsured and the party suing be legally entitled to recover damages." Doc. 19 at 4 (emphasis added) (quoting *Boradiansky*, 2007-NMSC-015, and *Marin*, 1990-NMSC-022).

In *Marin*, the New Mexico Supreme Court took up a similar issue: whether insurance companies may exclude household vehicles from coverage under UM benefits. 1990-NMSC-022. *Marin* involved a family who owned two vehicles. *Id.* ¶ 3. The Marins had uninsured motorist coverage on one vehicle but chose not to insure the other. *Id.* Mr. Marin was driving the uninsured vehicle, with his daughter as a passenger, when he caused a car wreck that killed his daughter. *Id.* ¶ 2. The insurance policy contained the following provision: "An 'uninsured motor vehicle' does not include any vehicle or equipment: 1. Owned by or furnished or available for the regular use of you or any 'family member'." *Id.* ¶ 4 (alteration omitted). The Court invalidated this exclusion as against New Mexico public policy, because—again—"the only legitimate limitations on recovery are those specifically set out in Section 66-5-301: (1) that the insured legally be entitled to recover damages, and (2) that the *negligent driver be uninsured*." *Id.* ¶ 8 (emphasis added). "The circumstances surrounding the death of Marin's daughter satisfy both requirements, and, as a passenger in an uninsured vehicle, she was insured against bodily injury including death." *Id.* The exclusion was likewise invalid because "it is not the intent of the statute to limit coverage for an insured to a particular location or a particular vehicle." *Id.* (quoting *Chavez*, 1975-NMSC-011, ¶ 11).

The Court cannot ignore the fact that these cases refer to the insured status of the motorist rather than the insured status of the vehicle. Because the outcome of these cases did not turn on whether the vehicle or motorist was uninsured, however, the Court is cautious about placing too much meaning on the precise term the New Mexico Supreme Court used in these cases.[8] The New Mexico Supreme Court's decision in *State Farm Automobile Insurance Co. v. Ovitz*, 1994-

---

[8] The court in *Marin* did note the plaintiff's argument that her coverage was "personal and not vehicle-oriented." 1990-NMSC-022, ¶ 5. The court, however, did not then directly address this distinction.

NMSC-047, 873 P.2d 979, supports this cautious approach. In that case, "David Ovitz was injured when the rental vehicle he was riding in, owned by Dollar Rent-A-Car, collided with a vehicle owned by Thrifty Rent-A-Car." *Id.* ¶ 2. The Dollar vehicle was self-insured under Hawaii's insurance laws and paid for David's medical expenses. *Id.* ¶ 3. Hawaii, a no-fault state, has abolished tort liability except when the accident results in death or certain injuries. *Id.* Because David was precluded from seeking noneconomic damages against Thrifty, he argued the tortfeasor was effectively uninsured and, therefore, he was legally entitled to uninsured motorist benefits under his insurance policy with State Farm. *Id.* The court found that State Farm was not obligated to pay uninsured motorist benefits "because David was not injured by an *uninsured motorist*." *Id.* ¶ 7 (emphasis added). When it repeated its holding later in the same opinion, however, the court used slightly different language: "recovery of uninsured motorist benefits is barred because David was not injured by an *uninsured vehicle*." *Id.* ¶ 9 (emphasis added). Thus, New Mexico Supreme Court cases do not definitively indicate whether courts should look to the insured status of the motorist or of the vehicle when the answer to that question may determine whether UM coverage is available.

Defendant contends that public policy concerns favor its position. It argues that allowing Plaintiffs to recover UM property damage would be absurd in light of cases in this district holding that an unrecovered stolen vehicle is not covered under UM policies because, in such situations, a plaintiff cannot demonstrate property damage. Doc. 16 at 13; *see also Mortensen v. Liberty Mutual Insurance*, No. 18-1121 KK/SMV, 2019 WL 1571730, at *6 (D.N.M. Apr. 11, 2019) (holding that theft is not covered under UM coverage because "the phrase 'injury or destruction of property' . . . does not include theft . . . ."); *Arnold v. Farmers Ins. Co. of Arizona*, 827 F. Supp. 2d 1289, 1290-91 (D.N.M.2011) (holding that the UMA does provide coverage for

loss of use, but that the plaintiffs were not entitled to loss-of-use damages for the theft of their property because their property had no accompanying physical damage). According to Defendant, it does not make sense to treat a theft victim who loses the entire value of his never-recovered vehicle differently than a theft victim who loses the entire value of her recovered, but totaled, vehicle. Because the victim whose vehicle is never recovered suffers *at least* the same loss as the victim whose vehicle is recovered with property damage, Defendant argues, the validity of a theft victim's UM property damage claim should not turn on whether the vehicle is recovered with property damage. In other words, Defendant argues that because a theft victim in this district cannot obtain UM benefits on a never-recovered stolen vehicle, UM benefits should likewise not be available for a theft victim whose stolen car is recovered with property damage.

But allowing an insured to recover UM benefits for property damage to his or her stolen and damaged car is not nearly as absurd in the context of other hypothetical comparisons. For instance, if a thief accidentally hits a car parked on the curb while fleeing in a stolen vehicle, the owner of the damaged parked car is eligible for UM property damage coverage. But, under Defendant's argument, the owner of the damaged stolen car involved in the same wreck is not. Given that both vehicles were damaged by a wreck an unknown thief caused, it arguably would be inequitable to treat the owners of the two vehicles differently. At the December 16 hearing, Defendant asserted that such a result would be equitable because the parked car was in a "car accident" and therefore entitled to UM coverage, whereas damage to the stolen vehicle was the result of a theft, not a "car accident." *See also* Doc. 16 at 8 (noting that under the policy UM property damage coverage only applies if the damage was caused by a "car accident.").

This argument would likely confront a skeptical New Mexico Supreme Court. True, the policy defines "car accident" as "an unexpected and unintended event that causes bodily injury

or property damage" and specifies that "[i]t must have arisen out of the ownership, upkeep, or use of a car or motor vehicle." D-UMF No. 6. However, in *Britt v. Phoenix Indemnity Insurance Co.*, the New Mexico Supreme Court instructed that "in analyzing whether a particular incident is an 'accident' for purposes of uninsured motorist coverage, the courts should view the incident from the injured party's perspective." 1995-NMSC-075, ¶ 8, 907 P.2d 994. "Thus if the event causing the injury is unintended and unexpected from the injured party's viewpoint, the injury is deemed to have occurred as a result of an accident." *Id.* This broad language indicates that the New Mexico Supreme Court might conclude that an insured, whose car is damaged after a thief accidentally crashes it, suffers property damage as a result of a "car accident."

Further, rational reasons exist to distinguish theft from property damage caused by the negligence of a non-permissive driver. For instance, when an item is stolen, an insurer carries a greater risk of fraud. After all, no chance exists that an insured whose car is demonstrably destroyed received a double recovery by selling the car in Mexico and then reporting it as having been stolen. Also, a thief's intentional act of stealing a car arguably can be distinguished from the thief's unintentional act of crashing a stolen car. The *Arnold* and *Mortensen* cases had no occasion to make decisions regarding the significance of these potential differences between intentional theft of a vehicle and unintentional property damage to a vehicle. As such, Defendant is incorrect that these cases necessarily preclude Plaintiffs' argument.

Finally, the foundation of Defendant's argument is that a vehicle with liability coverage is insured and so ineligible for UM/UIM coverage. Yet, accepting Defendant's argument that UM/UIM coverage is unavailable when a vehicle is stolen, a stolen vehicle covered by only liability and UM/UIM coverage is effectively uninsured. This is because, as Defendant acknowledges, "[l]iability coverage would never apply to insure a thief of a vehicle." Doc. 17 at

13. Thus, the New Mexico Supreme Court could determine that the foundation of Defendant's argument is a fiction—theft victims with only liability and UM/UIM coverage really have no insurance on their stolen vehicle.[9]

In sum, although the UMA's plain language favors Defendant's argument, how the New Mexico Supreme Court would receive that argument is uncertain. More certain is how the New Mexico Supreme Court would rule on the next issue the Court considers: whether punitive damages are available against an unknown tortfeasor. Because the Court can, and does, resolve the motions before it by deciding this second issue, the Court declines to predict whether the New Mexico Supreme Court would invalidate the policy definitions on which Defendant relies.

      B.    <u>Punitive damages are not available against an unknown tortfeasor.</u>

New Mexico law is clear on two points that bear on whether punitive damages are recoverable against an unknown tortfeasor in UM/UIM cases. First, blanket punitive damage exclusions in UM/UIM policy provisions are void. *Stinbrink v. Farmers Ins. Co. of Ariz.*, 1990-NMSC-108, ¶ 10, 803 P.2d 664. Where an insured could obtain punitive damages against an uninsured tortfeasor, the insured is entitled to collect payment for those punitive damages from his or her insurance company under the insured's UM policy. *Id.* But New Mexico law is also clear that where an insured could not legally recover punitive damages from the tortfeasor, neither can he or she recover punitive damages under his or her UM/UIM policy. *Jaramillo v.*

---

[9] In the present case, Plaintiffs had comprehensive insurance that would have applied had not a third-party's insurance covered the damage to Plaintiffs' vehicle. However, at oral argument Defendant disclaimed reliance on the existence of comprehensive coverage, and asserted that liability coverage alone is sufficient to categorize a vehicle as insured. Further, the parties' policy provides that an uninsured or underinsured motor vehicle does not mean a motor vehicle that is "[c]overed under the *liability coverage* of the same policy of which your insured car is a part." D-UMF 3 (emphasis added). Thus, Plaintiffs' vehicle's "insured" status does not hinge on its comprehensive coverage.

*Providence Washington Ins. Co.*, 1994-NMSC-018, ¶¶ 21-24, 871 P.2d 1343. Although neither *Stinbrink* nor *Jaramillo* explicitly addresses whether punitive damages are available against an unknown tortfeasor, the rationale on which they are based provides guidance helpful to answering this question. Having considered the rationale of these and other related New Mexico cases, the legislative purpose behind enacting compulsory motorist insurance coverage, and the policy goals punitive damages are designed to achieve, the Court concludes that in New Mexico punitive damages are not available for the acts of an unknown tortfeasor.

In *Jaramillo*, the New Mexico Supreme Court held that punitive damages cannot be recovered against the estate of a deceased tortfeasor. 1994-NMSC-018, ¶ 22. The court explained that, "[i]n New Mexico, the purpose of punitive damages is two-fold: Such additional damages are awarded for the *limited purposes* of punishment and to deter others from the commission of like offenses." *Id.* ¶ 26 (internal quotation marks omitted) (emphasis added). "The purpose of requiring an insurer to provide UM coverage is to be sure that an injured insured is compensated for injuries even when the tortfeasor is financially irresponsible." *Id.* ¶ 24. "In the past, when holding that insurance policies may cover punitive damages, we have relied on the principle that the purpose of punitive damages (to punish the tortfeasor) is not diluted by requiring the insurance company to pay the damages because the insurer can always sue the tortfeasor for recovery of the damages." *Id.* "When the tortfeasor cannot be punished for his culpable behavior, punitive damages no longer have the desired effect and, therefore, the victim loses the legal entitlement to recover those damages." *Id.*

Unlike the estate in *Jaramillo*, against which punitive damages were forever *legally* barred (because the deceased tortfeasor could never come back to life), it is possible for an unknown tortfeasor to be found. Thus, unlike a deceased tortfeasor, punitive damages against a

currently unknown tortfeasor are not necessarily forever foreclosed. Nonetheless, the rationale of *Jaramillo* applies with equal force to unknown tortfeasors. While the tortfeasor is unknown, no possibility of collecting against that tortfeasor exists. And, if the identity of the tortfeasor is discovered during the pendency of the lawsuit, the plaintiff can always move to amend his or her complaint.

As long as the identity of the tortfeasor remains unknown, punitive damages against the insurer can further neither the purpose of punitive damages nor the purpose of the UMA. Justice Montgomery noted in his dissent in *Stinbrink* that "[i]mposing punitive damages on the insurer shifts the deterrent effect from the culpable tortfeasor to the innocent insurer and provides a windfall to the insured in the face of the principle that punitive damages are not intended to compensate the plaintiff." 1990-NMSC-108, ¶ 19 (Montgomery, J., dissenting). As Justice Montgomery recognized, the New Mexico Supreme Court in *Stewart* and *Baker* justified this result by pointing out that the tortfeasor could be punished through a subrogation action by the insurer against the tortfeasor. *Id*. at ¶ 19 n.2 (citing *Stewart v. State Farm Muto. Auto. Ins. Co.*, 1986-NMSC-073, 726 P.2d 1374 and *Baker v. Armstrong*, 1987-NMSC-101, 744 P.2d 170). Where the tortfeasor is unknown, however, an insurer has no ability to "visit[] punishment on the party guilty of culpable behavior." *See id.* And, because the wrongdoer pays nothing, a punitive damage award cannot serve as a deterrent to other potential wrongdoers.

Similarly, punitive damages would do nothing to further the UMA's goal of covering the gap in compensation caused by an irresponsible tortfeasor who does not have legally mandated liability insurance. The goal of the UMA is to compensate. *Jaramillo*, 1994-NMSC-018, ¶ 24 ("The purpose of requiring an insurer to provide UM coverage is to be sure that an injured insured is compensated for injuries even when the tortfeasor is financially irresponsible."). The

goal of punitive damages is *not* compensation. *Madrid v. Marquez*, 2001-NMCA-087, ¶ 4, 33 P.3d 683 (noting that punitive damages are "sums awarded in addition to any compensatory or nominal damages, usually as punishment or deterrent levied against a defendant found guilty of particularly aggravated misconduct, coupled with a malicious, reckless or otherwise wrongful state of mind.") (internal quotation marks and citation omitted); *State Farm Mut. Auto. Ins. Co. v. Progressive Specialty Ins. Co.*, 2001-NMCA-101, ¶ 13, 35 P.3d 309 (noting that, rather than compensating a plaintiff, punitive damages are "a windfall conferred upon an otherwise fully compensated plaintiff") (internal quotation marks and citation omitted). Thus, punitive damages cannot further the goals of the UMA.

True, *Stinbrink* noted "punitive damages are as much a part of the potential award under the uninsured motorist statute as damages for bodily injury." 1990-NMSC-108, ¶ 5. But this statement appears to derive from the court's immediately preceding recognition that the victim of an uninsured tortfeasor might be legally entitled to recover punitive damages from that tortfeasor. *Id*. ¶ 4. In any event, to the extent *Stinbrink* opened the door to an argument that the victim of an uninsured tortfeasor could recover punitive damages under his or her UM policy even where the victim could obtain no judgment against the tortfeasor, *Jaramillo* shut that door four years later. 1994-NMSC-018, ¶ 24 ("When the tortfeasor cannot be punished for his culpable behavior, punitive damages no longer have the desired effect and, therefore, the victim loses the legal entitlement to recover those damages."). Because an unknown tortfeasor cannot be punished for his culpable behavior, *Jaramillo* applies with equal force in the present case.

A review of case law from other states supports this conclusion. Although research by the Court, Defendant, and Plaintiffs have all failed to yield any case in which any court has allowed punitive damages to be awarded against an unknown tortfeasor, the Court has found decisions

coming to the opposite conclusion. For example, the Georgia Court of Appeals has reasoned that an "award of punitive damages against an unknown tortfeasor for the purpose of deterring him from repeated alleged misconduct would be nonsensical," and analogizes the unknown-tortfeasor situation to the inability to obtain punitive damages against a deceased driver. *State Farm Mut. Ins. Co. v. Kuharik*, 179 Ga. App. 568, 568 (1986). In *Clatterbuck v. Doe*, the Virginia Circuit Court noted that, under Virginia law, the purpose of punitive damages is punishment and deterrence. 24 Va. Cir. 314, 1991 WL 11015283, at *1 (Aug. 1, 1991). In holding that punitive damages are unavailable against an unknown tortfeasor, it reasoned: "what prospective car thief would be dissuaded from stealing and damaging an automobile if punitive damages were assessed against John Does and collected against [the insurance company]?" *Id.* The Court finds the reasoning of these cases persuasive, and compatible with the pronouncements of the New Mexico Supreme Court in *Jaramillo*.

That an award of punitive damages against an unknown tortfeasor cannot achieve the statute's desired goals is further demonstrated by the difficulty in calculating damages against an unknown tortfeasor. Such a calculation requires consideration of the tortfeasor's intent and motive. Did the thief steal the car because he or she wanted a joy ride or did the thief act because he or she wanted a particular plaintiff to suffer? Or, was the thief faced with a desperate situation that would constitute mitigating circumstances? The reason punitive damages are difficult to calculate against an unknown tortfeasor is that a chasm exists between those damages and the goals they are designed to achieve. Because punitive damages would fail to serve their function when issued against an unknown tortfeasor, the Court finds that Plaintiffs are not "legally entitled to recover" punitive damages under their UM coverage. *See Boradiansky*, 2007-NMSC-

015, ¶ 17 (only two relevant elements of the UMA are "legally entitled to recover damages" and "the motorist be uninsured or underinsured").

    C.    <u>The mend-the-hold doctrine is not applicable in this case where Plaintiffs cannot show prejudice from Defendant's failure to list all of its reasons for denial in its pre-lawsuit letters.</u>

Plaintiffs point out that, although Defendant now argues that punitive damages are not available against an unknown tortfeasor, Defendant never made this argument in its pre-lawsuit correspondence. *See* Docs. 13-6, 13-8, 13-10. Consequently, Plaintiffs argue Defendant is forbidden from mending its hold and relying on an argument it did not initially assert.[10] Doc. 13 at 12. In fact, Plaintiffs assert, "it is bad faith for Sentry to now add new defenses after litigation has commenced despite having all the information it needed to make a proper coverage decision prior to litigation." Doc. 13 at 13.

The Court rejects this view of the mend-the-hold doctrine, following the Tenth Circuit's reasoning in *Genzer v. James River Insurance Co.*, 934 F.3d 1156 (10th Cir. 2019). In *Genzer*, the Tenth Circuit examined Oklahoma law on the subject and concluded that it would not recognize the doctrine in the form urged by the plaintiffs in that case. In so doing, the Tenth Circuit explained that "[t]he 'mend the hold' doctrine is a form of estoppel that forbids a party to a contract from assuming different or inconsistent positions on the contract's meaning." *Id.* at 1163. "Many states that recognize the doctrine apply it to limit an alleged nonperforming party in

---

[10] In its pre-lawsuit correspondence, Defendant asserted that UM property damage coverage does not provide coverage for theft, and cited two cases to support that proposition, *Arnold v. Farmers Insurance Co. of Arizona*, 827 F. Supp. 2d 1289, 1290-91 (D.N.M. Sept. 29, 2011) (holding that the UMA does provide coverage for loss of use, but that the plaintiffs were not entitled to loss-of-use damages for the theft of their property because their property had no accompanying physical damage), and *State Farm Mutual Automobile Insurance Co. v. Clatterbuck*, 421 S.E.2d 406, 407 (Va. 1992) (Virginia Supreme Court interpreting an insurance contract to hold that a vehicle insured on a policy cannot also be an uninsured vehicle entitled to uninsured motorist coverage). Docs. 13-6, 13-8 & 13-10.

a breach-of-contract action to defenses based on the party's prelitigation rationale for its nonperformance." *Id.* "The modern trend in these states limit the doctrine to situations in which a party has omitted defenses from its prelitigation rationale in bad faith or to another party's prejudice." *Id.* "Other states decline to restrict parties during litigation to statements made outside the litigation context. In those states, the doctrine limits a party to defenses that it first asserts in the early stages of litigation, and then only when a during-litigation change in position would constitute bad faith or prejudice another party." *Id. Genzer* also made clear that, "[a]s a federal court sitting in diversity, our task is to attempt to predict how the highest court would interpret the issue." *Id.* at 1164 (internal quotation marks omitted). And "[i]n making this prediction, we are generally reticent to expand state law without clear guidance from its highest court." *Id.* (internal quotation marks omitted).

Applying the mend-the-hold doctrine as Plaintiffs request here would require the Court to do what the Tenth Circuit has cautioned against: expand the doctrine without clear guidance from the New Mexico Supreme Court. The most extensive discussion of the mend-the-hold doctrine in New Mexico is not from that court at all; instead, it is from an unpublished decision in this District by Judge Bruce D. Black in *Padilla v. Western Heritage Insurance Co.*, No. 03-cv-695, Doc. 62 (D.N.M. May 24, 2004). The plaintiff in *Padilla* sued his insurance company, alleging it acted in bad faith by refusing to provide him a defense in an underlying lawsuit.[11] *Id.* at 1-2. The defendant insurance company initially refused to provide a defense to the plaintiff on the basis that the complaint in the underlying lawsuit failed to allege an occurrence that was covered under the plaintiff's policy. *Id.* at 3. The plaintiff then sued, alleging among other things

---

[11] Although the plaintiff in *Padilla* was actually the estate of the decedent with a cause of action, for simplicity the Court refers to the decedent as "plaintiff."

that the defendant's refusal to defend him in the underlying lawsuit constituted bad faith. *Id*. at 2.

After the plaintiff sued, the defendant insurance company asserted a new additional reason for

refusing to defend the plaintiff. It claimed, as the *Padilla* court summarized, "even if the

amended complaint [in the underlying lawsuit] did sufficiently allege an occurrence, several

exclusions contained in the . . . policy exclude coverage over the occurrence." *Id.* at 5.

 The *Padilla* court noted that, in a coverage-dispute case, New Mexico law may require an

insured to demonstrate "detriment or prejudice resulting from the insurer's failure to raise its

other grounds for denial of coverage." *Id.* at 7. But the *Padilla* court distinguished coverage-

dispute cases from duty-to-defend cases, noting that liability in a duty to defend case is

"analyzed on the basis of facts known to the insurer at the time it declines to defend, not on the

basis of facts the insurer can subsequently discover." *Id.* In a duty-to-defend case, "the reasons

the insurer gives for refusing to defend a lawsuit, at the time of such refusal, should be the only

subject of analysis in deciding whether the insurer acted in good faith toward its insured when it

declined to provide a defense." *Id.* Given that the present case is a coverage-dispute case rather

than a duty-to-defend case, *Padilla* is not directly on point. *See Montoya v. Loya Ins. Co.*, No.

18-590 SCY/KBM, 2019 WL 1116010, at *3 n.1 (D.N.M. Mar. 11, 2019) (cited by Plaintiffs,

Doc. 13 at 11-12) (noting the distinction between duty-to-defend cases and coverage-dispute

cases, and declining to decide whether *Padilla*'s rationale should be applied in coverage-dispute

cases).

 The guidance available from New Mexico state courts is limited. In *Larson v. Occidental*

*Fire & Casualty. Co.*, the supreme court stated that, "[o]rdinarily, when an insurer, with

knowledge of all pertinent facts, denies liability upon a specific ground, all other grounds are

deemed to be waived." 1968-NMSC-160, ¶ 6, 446 P.2d 210, *overruled on other grounds by*

*Estep v. State Farm Mut. Auto. Ins. Co.*, 1985-NMSC-069, ¶ 6, 703 P.2d 882. "This waiver is conditioned, however, upon a showing of detriment or prejudice." *Id.* And the court found "nothing in this case to indicate that the insured acted upon the announced ground or incurred any expense, loss or detriment in reliance upon it." *Id.* Plaintiffs argue that *Larson* does not apply because the legislature subsequently enacted the Unfair Insurance Practices Act, which modified an insurer's statutory obligations. Doc. 13 at 16-17. This argument confuses the mend-the-hold doctrine with whether an insurance company committed a violation of the UIPA. If the UIPA in fact enacted a statutory version of the doctrine restricting insurance companies to their pre-lawsuit rationale, that is a separate matter from whether New Mexico case law requires it. And under the relevant existing case law, this Court is inclined to place New Mexico among the states that "limit[] the doctrine to situations in which a party has omitted defenses from its prelitigation rationale in bad faith or to another party's prejudice." *See Genzer*, 934 F.3d at 1164 (interpreting Oklahoma law).

Here, Plaintiffs nonetheless argue that their preferred version of this doctrine "has been the law in New Mexico for over a century," citing to a 1910 decision from the New Mexico Supreme Court, *Irwin v. Sovereign Camp of Woodmen of the World*, 1910-NMSC-023, 110 P. 550. *See* Doc. 13 at 11. In *Irwin*, the appellee, a privately held insurance company, admitted liability and advised the plaintiff-appellant to bring a lawsuit in order to dispose of the conflicting claims of a third party. 1910-NMSC-023, ¶ 9. Once the plaintiff filed suit, however, the company changed its course and argued against the appellant's position. *Id.* ¶ 3. The New Mexico Supreme Court vacated the decision of the lower court with instructions to enter judgment for the appellant, on the grounds that "appellee will not be permitted, after appellant has begun suit and incurred costs, to interpose another defense." *Id.* ¶ 9. Although *Irwin* does not

discuss whether prejudice to the insured is required before an insurance company is estopped from changing its rationale, prejudice in *Irwin* did occur. Specifically, the *Irwin* plaintiff acted upon the announced ground (by filing suit for a simple declaration of benefits) and then incurred expense (a full trial and appeal) when the insurer changed course. Plaintiffs cite no New Mexico case where a court has applied the mend-the-hold doctrine in the absence of prejudice.

Plaintiffs therefore also argue they suffered prejudice in having to hire an attorney and file this lawsuit. The logical extension of this argument is that, had Defendant only informed Plaintiffs of its position that punitive damages are not recoverable against an unknown tortfeasor, Plaintiffs never would have hired an attorney and filed suit. Yet, Plaintiffs asserted at the December 16 hearing that it was "as clear as day" that Defendant's unknown tortfeasor argument was invalid. Given Plaintiffs' perception of the strength of their position (even after extensive briefing), it is unlikely that, had Defendant made Plaintiffs aware of its unknown tortfeasor argument before Plaintiffs filed suit, Plaintiffs would have been dissuaded from filing suit. Instead, it is more likely that, regardless of when Defendant raised the unknown tortfeasor argument, Plaintiffs' reaction would have been the same as it was at the hearing: to dismiss the argument as clearly invalid and proceed with litigation.

Plaintiffs' claim that Defendant's unknown tortfeasor argument caught them by surprise is also unavailing. To the knowledge of the Court and the parties, no court anywhere has ever recognized punitive damages against an unknown tortfeasor. Given the absence of any such case law, Defendant's resistance to paying punitive damages in such a situation is no surprise. In other words, this is not a case where Defendant's failure to raise an argument pre-lawsuit lulled Plaintiffs into filing a lawsuit they would have otherwise avoided. This distinguishes the present situation from *Irwin*. In *Irwin*, the defendant admitted liability and then advised and requested

the plaintiff to bring suit for no purpose other than to dispose of the conflicting claims of a third party. 1910-NMSC-023, ¶ 9. In contrast, Defendant here has consistently denied liability, has never encouraged Plaintiffs to bring suit, and never indicated that it would not defend the case if Plaintiffs did bring suit. Thus, *Irwin* presents a different fact pattern than the present case. And, in the more than 100 years since the Supreme Court of the Territory of New Mexico decided *Irwin*, it does not appear that any New Mexico court has applied the mend-the-hold doctrine in a case with facts similar to those in the present case.

Nor would it make sense to apply *Irwin* in the manner Plaintiffs suggest. Defendant would have the Court lend a deaf ear to a meritorious argument: that punitive damages are unavailable against an unknown tortfeasor. Doing so cuts against the interest of the courts, the parties to lawsuits, and the general public in having cases decided on their merits. Although, circumstances exist (as *Irwin* demonstrates) where an insurance company will be estopped from making an argument post-lawsuit if it did not make that same argument pre-lawsuit, the Court declines to hold that an insurance company *is necessarily* barred from raising any argument post-lawsuit that it did not also raise pre-lawsuit. In light of the fact that New Mexico has never explicitly adopted the mend-the-hold doctrine as framed by Plaintiffs, and due to the Tenth Circuit's very recent caution in a mend-the-hold case against "expand[ing] state law without clear guidance from its highest court," *Genzer*, 934 F.3d at 1164, the Court rejects Plaintiffs' version of the mend-the-hold doctrine.

    D.    <u>The Court's determination that punitive damages are not available is fatal to Counts I and II of Plaintiffs' Complaint.</u>

For the reasons stated above, the Court finds Plaintiffs are not entitled to UM coverage for punitive damages stemming from the actions of an unknown thief and, therefore, grants summary judgment in favor of Defendant on Count I of Plaintiffs' Complaint. Because Plaintiffs

are not entitled to coverage, the Court also finds Defendant did not breach its insurance contract with Plaintiffs by refusing to pay UM benefits. *See* Doc. 1-1, ¶ 32 (Complaint, alleging "Defendant Sentry's refusal to pay any UIM [sic] benefits that the Plaintiffs are entitled to constitutes a breach of the applicable contract of insurance"). Accordingly, the Court also grants summary judgment in favor of Defendant on Count II (breach of contract) of Plaintiffs' Complaint. Lastly, the Court denies Plaintiffs' request to dismiss Count II of the Counterclaim (declaratory relief regarding UM/UIM limits). Although the parties appear to agree on the UM/UIM limit that is the subject of Count II of the Counterclaim, neither party requests summary judgment as to this amount. Defendant makes no motion regarding Count II and Plaintiffs only request *dismissal* of Count II. Doc. 13 at 25. The Court does note, however, that its finding that Plaintiffs are not entitled to punitive damages under their UM coverage—the only UM damages Plaintiffs seek—renders the UM limit amount irrelevant.

### III. The Court grants summary judgment on Count III (extra-contractual claims) of Plaintiffs' Complaint.

Count III of Plaintiffs' Complaint appears to allege violations of the Unfair Insurance Practices Act ("UIPA") as well as a common-law "bad faith" cause of action. Doc. 1-1 ¶¶ 36-43; *see also id.* ¶ 44. The causes of action under the UIPA and common law are similar, but not identical. "Under New Mexico law, an insurer who fails to pay a first-party claim has acted in bad faith where its reasons for denying or delaying payment of the claim are frivolous or unfounded." *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 18, 85 P.3d 230. For its part, "Section 59A-16-20 of the Trade Practices and Fraud Article (Article 16) of the Insurance Code prohibits insurance companies from engaging in certain 'unfair and deceptive practices' . . . ." *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 1, 89 P.3d 69. The outlawed practices are specifically enumerated in the statute. *Id.*

Plaintiffs specifically make the following nine allegations against Defendant: (1) violation of NMSA § 59A-16-20(A) for misrepresenting pertinent facts or policy provisions, Doc. 1-1 ¶ 36; (2) violation of NMSA § 59A-16-20(B) for failing to acknowledge and act reasonably prompt upon communications, Doc. 1-1 ¶ 37; (3) violation of NMSA § 59A-16-20(C) for failing to adopt and implement reasonable business standards for prompt investigation and processing of a claim, Doc. 1-1 ¶ 38; (4) violation of NMSA § 59A-16-20(D) for failing to affirm or deny coverage within a reasonable time, Doc. 1-1 ¶ 39; (5) violation of NMSA § 59A-16-20(E) for failing to settle a claim in good faith, Doc. 1-1 ¶ 40; (6) violation of NMSA § 59A-16-20(G) for forcing Plaintiffs to pursue litigation to recover amounts due, Doc. 1-1 ¶ 41; (7) violation of NMSA § 59A-16-20(M) for failing to settle a claim under one portion of the policy in order to influence settlement under other portions of the policy, Doc. 1-1 ¶ 42; (8) violation of NMSA § 59A-16-20(N) for failing to promptly provide a reasonable basis for denial of the claim, Doc. 1-1 ¶ 43; and (9) unreasonably failing to pay Plaintiffs' claim entitling Plaintiffs to recover attorney's fees and costs, Doc. 1-1 ¶ 45. After listing these numerous alleged violations of the UIPA, Plaintiffs then allege that "Defendant Sentry's actions were in bad faith, malicious, willful, reckless and/or wanton, entitling Plaintiff to award of punitive damages." Doc. 1-1, ¶ 44. But Plaintiffs do not more specifically state which actions they believe Defendant carried out in bad faith.

Defendant asserts that, because "Plaintiffs are not entitled to UM benefits for their punitive damages claims, . . . there can be no extra-contractual claims," and that Defendant committed no unfair or deceptive insurance practices. Doc. 17 at 16-17. Accordingly, Defendant requests the Court enter summary judgment in its favor on all allegations in Count III of Plaintiffs' Complaint. Defendant is correct that "[a]s a general rule, an insurer may deny

coverage without exposure to a claim of bad faith failure to pay as long as it has reasonable grounds for the denial." *Haygood v. United Serv. Auto. Ass'n*, -- P.3d ---, 2019 WL 4415247, ¶ 19 (N.M. Ct. App. 2019) (citing *Am. Nat'l Prop & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 13, 293 P.3d 954). However, an insurer can still act in bad faith "based on conduct separate from [the insurer's] refusal to pay." *Id.* ¶ 20 (citing *O'Neel v. USAA Ins. Co.*, 2002-NMCA-028, ¶ 9, 41 P.3d 356).

In response, Plaintiffs argue that discussion of the extra-contractual claims is premature because discovery has not yet commenced.[12] To the extent Plaintiffs are making a Rule 56(d) request to allow more time to obtain discovery before a ruling on the Motion for Summary Judgment, they have not met Rule 56(d)'s requirements. *See Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (holding that Rule 56(d) requires a declaration that (1) identifies the probable facts not available, (2) states why those facts cannot be currently presented, (3) specifies the steps taken to obtain those facts, and (4) explains how additional time will enable the party to obtain facts to rebut the motion for summary judgment). Plaintiffs' request to delay deciding Defendant's summary judgment motion until after they engage in further discovery is accordingly denied.

The extra-contractual allegations in Count III of Plaintiffs' Complaint can be categorized in two groups: denial of Plaintiffs' claim, Doc. 1-1 ¶¶ 36, 38-43, 45, and delay in communications with Plaintiffs, *id.* ¶ 37. Plaintiffs also allege bad faith for "Defendant Sentry's actions" generally, *id.* ¶ 44, without specifying which actions are in bad faith. The Court will

---

[12] Judge Ritter issued an Initial Scheduling Order on May 28, 2019. Doc. 15. Thereafter, Defendant filed a Motion to Stay Discovery. Doc. 18. Judge Ritter vacated the Scheduling Conference, finding good cause pursuant to Rule 16(b)(2) to delay entering a scheduling order pending the dispositive motion and motion to stay. Doc. 29.

address the denial claims first. Assuming Plaintiffs are asserting that Defendant acted in bad faith when it determined Plaintiffs' vehicle was insured and so not entitled to UM coverage, as the discussion in section II.A of this opinion demonstrates, New Mexico law is unsettled on this UM coverage issue and both sides have potentially winning arguments. Moreover, even if Defendant's argument were to end up on the losing side, an insurance company does not commit bad faith by taking a reasonable legal position that a court later rejects. *See United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 1985-NMSC-090, ¶ 17, 709 P.2d 649 (holding that since there were legitimate questions regarding damages, the insurance company's failure to pay was not unfounded and therefore not in bad faith). Here, Plaintiffs presented a claim about which New Mexico law provides no clear guidance, that no court anywhere has recognized as valid, and which courts in other states have recognized as invalid (see *State Farm Mutual Automobile Insurance Co. v. Clatterbuck*, 421 S.E.2d 406, 407 (Va. 1992), and *Hafner v. Detroit Automobile Inter-Insurance Exchange*, 438 N.W.2d 891, 891, 892 (Mich. Ct. App. 1989)). No reasonable jury could find that Defendant acted frivolously or in an unfounded manner by refusing to pay a claim in such a situation. Accordingly, Defendant has met its burden to show that its actions related to denial of the claim were not in bad faith or a violation of the UIPA related to denial of the claim. Specifically, the Court rejects the following UIPA allegations Plaintiffs have made against Defendant: misrepresenting pertinent facts or policy provisions; failing to implement reasonable standards for prompt investigation; failing to deny coverage within a reasonable time; failing to effectuate a prompt settlement; compelling Plaintiffs to institute litigation by offering less than the amount ultimately recovered; and failing to provide Plaintiffs with an explanation of denial. The Court therefore grants summary judgment in Defendant's favor as to the allegations made in paragraphs 36, 38-43, and 45 of Count III of Plaintiffs' Complaint. The Court also

grants summary judgment in Defendant's favor as to the allegation of bad faith, Doc. 1-1 ¶ 44, as it relates to the denial of Plaintiffs' claim.

The above analysis, however, does not apply to the claim alleged in paragraph 37—that Defendant failed to acknowledge and act reasonably promptly upon communications. *See* Doc. 1-1 ¶ 37 (citing NMSA § 59A-16-20(B)). Although not clear from their complaint, Plaintiffs argued at the hearing that their delay claim is premised on an allegation contained in an earlier section of their complaint: that, although they requested signed selection/rejection forms of UM/UIM stacking on December 10, 2018, Defendant did not provide them the forms until March 18, 2019. *See* Doc. 1-1 ¶ 9. Plaintiffs also argued at the hearing that Defendant, in bad faith, delayed responding to Plaintiffs' request to settle with the auto repair shop so that Plaintiffs could pay off their car loan. These delays, Plaintiffs argue, independently violate the law. In other words, Plaintiffs assert the Court's ultimate decision that they cannot recover punitive damages under their UM/UIM policy is not related to, and so not fatal to, the delay claims.

Defendant argues that while "Plaintiffs quibbles that Sentry did not provide them with copies of forms they had signed as early as they wanted them, that is insufficient as they must also establish damages as a result of not receiving the signed forms quicker for any UIPA violation." Doc. 17 at 18. Because Defendant offers no outside evidence to support this assertion, the Court construes Defendant's argument as an attack on the sufficiency of the pleadings rather than a true summary judgment argument. Therefore, the Court will construe Defendant's motion as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *See, e.g.*, *Goton v. Pestak*, No. 12cv0194, 2013 WL 12330035, at *1 (D.N.M. May 6, 2013) (citing *In re Mullaney*, 179 B.R. 942, 945 (D. Colo. 1995)). "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of*

*Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Defendant is correct that Plaintiffs do not state a valid claim under the UIPA for delay because they do not plead facts necessary to meet certain elements of a UIPA claim, such as actual damages and intent. Doc. 17 at 18, 20. Indeed, NMSA § 59A-16-20 provides that an action is only a violation of the UIPA if the insurer acts knowingly or with such frequency as to indicate a general business practice and NMSA § 59A-16-30 provides that an insured must show actual damages. After review of Plaintiffs' Complaint, the Court agrees that the pleading is insufficient in these respects. *See* Doc. 1-1, ¶ 9 (asserting only that Plaintiffs requested the forms in December and did not receive them until March). Accordingly, the UIPA allegation in paragraph 37 of Count III is subject to dismissal under Federal Rule of Civil Procedure 12(c).

As discussed above, Plaintiffs also state in their Complaint that Defendant's actions were in bad faith. Doc. 1-1 ¶ 44. To the extent Plaintiffs are alleging the delay in providing the forms was bad faith, Plaintiffs have also not met their pleading burden to establish a common-law cause of action for bad-faith delay. At a minimum, such a claim requires a showing that the insurance company acted at least unreasonably in its delay.[13] Plaintiffs plead no facts which plausibly allege that Defendant acted unreasonably in withholding the forms and so that claim is

---

[13] The standard of review for bad faith delay claims, as compared to bad faith denial claims, is not totally clear. "A plaintiff must show that a denial of a claim is frivolous or unfounded, but in cases of delay rather than denial, it appears that a simple reasonableness standard applies." *See Montoya v. Loya Ins. Co.*, Civ. No. 18-590 SCY/JFR, 2019 WL 5457081 (D.N.M. Oct. 24, 2019) (citing NMRA UJI 13-1702). Here, Plaintiffs do not address this issue, and do not allege sufficient facts under either standard.

also subject to dismissal under Federal Rule of Civil Procedure 12(c). Plaintiffs also plead no facts related to their argument raised at the hearing that Defendant delayed responding to their request to settle.

Plaintiffs initially filed their Complaint in New Mexico state court, which maintains a less stringent pleading standard than federal court. *See* NMRA, Rule 1-008(A)(2) (requiring that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Madrid v. Vill. of Chama*, 2012-NMCA-071, ¶ 17, 283 P.3d 871, 876 (criticizing the federal pleading standard under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court thus finds that Plaintiffs should be allowed to move to amend their Complaint in accordance with this Order and the federal standard that requires more specific factual allegations related to UIPA violations and bad faith based on Defendant's alleged delays. Additionally, the Court finds that Plaintiffs should be given an opportunity to amend because this case is in its early stages and discovery has not yet commenced. *See* Doc. 32. If Plaintiffs do not file such a motion within 30 days from the entry of this Order, the Court shall dismiss the allegations in paragraphs 37 and 44 of Count III. Further, this leave to move to amend does not extend to the futile claims discussed in the next section (section IV) of this Order.[14]

---

[14] While the Court generally discourages piecemeal litigation, "the Court recognizes that multiple motions for summary judgment may be appropriate in some circumstances." *Vera v. Rodriguez*, Civ. No. 16-419 SCY/KBM, 2017 WL 6621048, at *2 (D.N.M. Dec. 27, 2017). In this case, the Court recognizes that the parties dedicated the majority of their briefing to the main issue of whether Plaintiffs are entitled to UM coverage. Accordingly, should Plaintiffs choose to move to amend and should the Court grant that leave to amend their Complaint, the Court will entertain further motions practice on the remaining extra-contractual claim(s), should either side wish to pursue that course.

**IV.    The Court denies Plaintiffs' current Motion for Leave to File First Amended Complaint.**

After the parties completed briefing on their summary judgment motions, Plaintiffs filed a motion to amend their complaint. Doc. 33. The proposed amended complaint, which Plaintiffs attached to their motion, largely mirrors the operative complaint. *Compare* Doc. 1-1 at 8-14, *with* Doc. 33-1. It does not bring any new causes of action; instead, it seeks to add more facts and more details to the current causes of action. Plaintiffs seek to add to their complaint many of the arguments they raised in their briefing on the motions for summary judgment regarding the applicability of UM coverage. Because the Court has addressed those arguments in this Order and finds that Plaintiffs are not entitled to UM coverage, it finds that amending the complaint would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that the court may deny a motion to amend for an apparent or declared reason such as futility of the amendment); *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment.").

Plaintiffs' proposed amended complaint also seeks to add facts regarding Defendant's litigation conduct—specifically, that it acted in bad faith by filing a counterclaim. *See* Doc. 33-1 at 5, 7-11. An insurance company's obligation to act in good faith does not come to a halt once its insured files a complaint and so an insurance company's post-litigation conduct continues to be relevant. In *Sinclair v. Zurich Am. Ins. Co.*, Judge Lynch concluded that New Mexico courts would recognize that:

> [1] an insurer's duty to act in good faith does not end when its insured files suit against it although the insurer and insured begin an adversarial relationship at that time . . .

[2] an insurer has an obligation to timely reassess its initial decision to deny coverage based upon information received subsequent to the initial decision, even if that information is received after suit is filed . . . [and]

[3] an insurer can be held liable for violations of the Unfair Insurance Practices Act that occur after the filing of suit.

129 F. Supp. 3d 1252, 1257 (D.N.M. 2015). However, Judge Lynch also concluded that New Mexico courts would only allow "evidence of an attorney's litigation conduct to be admissible as evidence of bad faith in rare cases involving extraordinary facts." *Id.* at 1258. This Court agrees. The decision to file a counterclaim is attorney-litigation conduct, not a decision by the insurance company related to its coverage denial. Even if a litigant files a meritless counterclaim for an improper purpose, "that conduct is appropriately addressed under the Federal Rules of Civil Procedures and Rules of Professional Conduct" rather than through a separate bad faith action.[15] *Id*. at 1259.

The Tenth Circuit's decision in *Timberlake Construction Co. v. U.S. Fidelity & Guarantee Co.* reinforces this conclusion. 71 F.3d 335 (10th Cir. 1995). There, the Tenth Circuit found litigation conduct consisting of (1) a letter from an insurance company's attorney to its adjuster opining that the plaintiff insured was "squirming pretty good"; (2) the decision to file a counterclaim against the plaintiff; and (3) the decision to join a third-party as a necessary party to be inadmissible as evidence of bad faith. *Id*. at 339, 341. The Tenth Circuit's rationale in *Timberlake Construction Co.* applies with equal force to the present case. For these reasons, the Court denies Plaintiffs' current request to amend their complaint as futile.

---

[15] The Court need not address the merits of Plaintiffs' contention that Defendant acted improperly in filing its counterclaim because Plaintiffs' argument fails even assuming the truth of this contention.

## CONCLUSION

For the above stated reasons, Plaintiffs/Counter-defendants Shawn Ammons and Jessica Ammons' Motion for Partial Summary Judgment for UM Benefits (Doc. 13) is DENIED and Sentry's Cross-Motion for Summary Judgment (Doc. 17) is GRANTED as follows:

1)  Summary judgment is granted in Defendant's favor on Counts I and II.

2)  Summary judgment is granted in Defendant's favor on the allegations made in paragraphs 36, 38-43, and 45 of Count III of Plaintiffs' Complaint. The Court also grants summary judgment in Defendant's favor as to the allegation of bad faith, Doc. 1-1 ¶ 44, as it relates to the denial of Plaintiffs' claim.

3)  Defendant's request for summary judgment as to paragraphs 37 and 44 of Count III of Plaintiffs' Complaint as they relate to the alleged delays in Defendant's response to Plaintiffs' requests, is construed as a motion under Federal Rule of Civil Procedure 12(c), and is granted. However, Plaintiffs shall be allowed 30 days from the entry of this Order to move to amend. If Plaintiffs do not file such a motion to amend, the Court shall dismiss the allegations in paragraphs 37 and 44 of Count III.

4)  Plaintiffs' request to dismiss Count II of Defendant's Counterclaim is denied.[16]

It is further ordered that Plaintiffs' current Opposed Motion for Leave to File First Amended Complaint (Doc. 33) is DENIED.


UNITED STATES MAGISTRATE JUDGE
Presiding by consent

---

[16] Both Count I and Count II of Defendant's counterclaim remain live because the Court denies Plaintiffs' request for dismissal as to Count II and Defendant did not move for summary judgment as to either count.